UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
HAIYAN JIANG,

       Plaintiff,      **MEMORANDUM & ORDER**
                   22-CV-643 (MKB) (CLP)
   v.

D&S WEDDING PLANNER INC., D&S
GROCERY STORE INC., DANNY WONG and
QIN YING CHEN,
        Defendants.
---------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

  Plaintiff Haiyan Jiang commenced the above-captioned action on February 4, 2022,

against Defendants D&S Wedding Planner Inc., D&S Grocery Store Inc., Danny Wong, and Qin

Ying Chen, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

("FLSA"), and the New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL").  (Compl.,

Docket Entry No. 1.).  On June 23, 2022, Plaintiff moved for default judgment seeking, *inter*

*alia*, damages, liquidated damages, interest, and attorneys' fees and costs.  (Pl.'s Mot. for Default

J. ("Pl.'s Mot."), Docket Entry No. 13; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket

Entry No. 14.)  On October 3, 2022, the Court referred the motion to Magistrate Judge Cheryl L.

Pollak for a report and recommendation.  (Order dated Oct. 3, 2022.)  By report and

recommendation dated January 10, 2023, Judge Pollak recommended that the Court deny

Plaintiff's motion without prejudice, (the "R&R").  (R&R, Docket Entry No. 20.)  Plaintiff

timely filed her objection.  (Pl.'s Obj. to R&R ("Pl.'s Obj."), Docket Entry No. 21.)

  For the reasons set forth below, the Court grants Plaintiff's motion in part and denies it in

part.

## I.  Background

The Court assumes familiarity with the underlying facts as detailed in the R&R and provides only a summary of the pertinent facts.

Plaintiff alleges that from approximately May 1, 2019 to October 24, 2021 she was employed as a receptionist/assistant at D&S Wedding and D&S Grocery, entities owned and operated by the same individuals in the same location.  (Compl. ¶¶ 9, 33, 36).  From May 1, 2019 to September 30, 2019, Plaintiff worked at Defendants' 18 East Broadway location from 11 AM to 5 PM five days a week and was paid $1,000 per month regardless of the hours worked.  (*Id.* ¶¶ 37, 38.)  Defendants paid Plaintiff an additional $50 if she worked at a wedding for Defendants, which required an additional 5.5 hours of work.  (*Id.* ¶ 38.)  During this period, Plaintiff worked an average of two weddings per week.  (*Id.* ¶ 39.)  From December 1, 2019 to March 12, 2020, Plaintiff worked the same arrangement at Defendants' 6020 7th Avenue location.  (*Id.* ¶¶ 40–42.)  On September 19, 2020, Plaintiff worked for Defendants from 9 AM to 9 PM and was paid $100 for the day.  (*Id.* ¶ 43.)  From May 10, 2021 to June 19, 2021, Plaintiff worked at Defendants' 4413 8th Avenue location.  (*Id.* ¶ 44.)  During this period, she worked from 9 AM until 5 PM from May 10, 2021 to May 15, 2021; from June 5, 2021 to June 10, 2021; and on June 19, 2021.  (*Id.* ¶ 45.)  Defendants paid Plaintiff $700 for this work.  (*Id.* ¶ 46.)  On October 24, 2021, Plaintiff worked from 9 AM until 5 PM and received $100 from Defendants for this work.  (*Id.* ¶ 47.)  Plaintiff was paid in cash, usually on the first of each month.  (*Id.* ¶ 48.)

### a.  Procedural history

Plaintiff filed a Complaint on February 4, 2022, alleging labor violations under federal and state law.  (Compl.)  Plaintiff served D&S Grocery and D&S Wedding on March 18, 2022,

and served Wong and Qin on March 19, 2022.  (Docket Entry Nos. 7, 8.)  Defendants did not respond to the Complaint and on May 10, 2022, the Clerk of Court noticed a default against them.  (Clerk's Entry of Default, Docket Entry No. 10.)  Plaintiff moved for a default judgment on June 23, 2022, (Pl.'s Mot.), and on October 3, 2022, the Court referred the matter to Judge Pollak for a report and recommendation, (Order dated Oct. 3, 2022).  By report and recommendation dated January 10, 2023, Judge Pollak recommended that the Court deny Plaintiff's motion without prejudice.  (R&R.)  Plaintiff filed her objection on January 24, 2023. (Pl.'s Obj.)

> **b.   Report and recommendation**

In the R&R, Judge Pollak noted that Plaintiff submitted three documents in connection with her June 22, 2022 motion for default judgment: (1) a memorandum of law, (2) a declaration by Plaintiff, and (3) an undated certification from attorney Vincent S. Wong (the "Certification").  (*See* Pl.'s Mem.; Decl. of Haiyan Jiang, Docket Entry No. 15; Certification, Docket Entry No. 16.)  The Certification was undated and included the incorrect docket number, as well as the caption "Zhi Jian Pan, individually and on behalf of all other employees similarly situated, v. Wa Sushi & Thai Inc., Jian Zhu Inc., Thai & Sushi Inc., Guo Dong Chi, and Jiang Zhu a/k/a Jiang Yo."  (Certification.)  In addition, the body of the Certification referred to "plaintiffs" although there is only one Plaintiff in the case.  (*Id.*)

On November 4, 2022, Judge Pollak issued an order directing Plaintiff to file any necessary supplemental materials, including an estimation of damages.  (Order dated Nov. 4, 2022, Docket Entry No. 17.)  On Nov. 17, 2022, Plaintiff filed a Supplemental Declaration of Vincent S. Wong in Support of Plaintiff's Motion ("Supplemental Declaration").  (Suppl. Decl.,

Docket Entry No. 19.)  The Supplemental Declaration contains an incorrect caption and docket number and refers to "plaintiffs" in several instances.  (*See, e.g.*, *id.* ¶¶ 71–72, 75.)

Judge Pollak found that "because it is not entirely clear" that the Certification and Supplemental Declaration "contain accurate information" she declined to "speculate as to the proper amount of damages to be awarded."  (R&R at 5.)  Judge Pollak recommended that Plaintiff's motion for default judgment be denied and that the Court direct Plaintiff to refile her entire motion.  (*Id.*)

### c.   Plaintiff's objection to the R&R

Plaintiff objects to the R&R, arguing that "the moving papers provide adequate factual and legal basis for the damages to be calculated."  (Pl.'s Obj. 1.)  Plaintiff argues that although two of her filings bear the wrong caption and "in several places the word 'Plaintiffs' (plural) is used instead of 'Plaintiff' (singular)," all the "other documents in the motion" include the correct caption.  (*Id.* 1–2.)  She further argues that "both of [the] incorrectly captioned Declarations make direct references to the Plaintiff and facts related to Plaintiff['s] case such as filing dates, employment dates, and references to the other correctly captioned documents filed along with the motion, such that any confusion caused by the caption should be easily dispelled by the contents of the document themselves."  (*Id.* at 2.)  Plaintiff argues that "[t]hese documents, along with the exhibits included with the moving papers make it such that there should be no speculation as to the basis, facts, law, or calculations made as to Plaintiff's damages."  (*Id.*)

## II. Discussion

### a. Standards of review

#### i. R&R

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, No. 15-992-CR, 2022 WL 402394, at *3 (2d Cir. Feb. 10. 2022) (citing *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *See S.J. v. N.Y.C. Dep't of Educ.*, No. 21-CV-240, 2022 WL 1409578, at *1 n.1 (2d Cir. May 4, 2022) (noting that district court applied correct legal standard in conducting *de novo* review of portions of magistrate's report to which specific objections were made and reviewing portions not objected to for clear error). The clear error standard also applies when a party makes only conclusory or general objections. Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

ii. **Default judgment**

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step

process' for the entry of judgment against a party who fails to defend: first, the entry of a default,

and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*,

645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

"[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a

matter of law when the factual allegations of the complaint are taken as true." *Bricklayers &*

*Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir.

2015) (citing *Mickalis Pawn Shop*, 645 F.3d at 137). "A default . . . only establishes a

defendant's liability if those allegations are sufficient to state a cause of action against the

defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir.

2013); *LG Funding, LLC v. Fla. Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y.

July 15, 2015) ("To determine whether the default judgment should issue, the [c]ourt examines

whether 'the factual allegations, accepted as true, provide a proper basis for liability and relief.'"

(quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y.

2010))).  However, because there is "'a strong preference for resolving disputes on the merits,'

and because 'a default judgment is the most severe sanction which the court may apply,' . . . a

district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn*

*Shop*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron Oil Corp. v.*

*Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones*

*Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor

of the [defaulting] party," *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d

508, 514 (2d Cir. 2001)).  "Further, concerns regarding the protection of a litigant's rights are

heightened when the party held in default appears *pro se*. . . . Hence, as a general rule a district

court should grant a default judgment sparingly . . . when the defaulting party is appearing *pro

se*." *Enron Oil Corp.*, 10 F.3d at 96.  "The entry of a default, while establishing liability, 'is not

an admission of damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Finkel v.

Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009)).  "There must be an evidentiary basis for the

damages sought by plaintiff, and a district court may determine there is sufficient evidence either

based upon evidence presented at a hearing or upon a review of detailed affidavits and

documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro

Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2);

and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

　　The Court has reviewed Plaintiff's Motion and supporting filings and concludes that the

errors they contain are clerical.[1]

### b.   Plaintiff's default judgment motion

　　Plaintiff has sufficiently established minimum wage, overtime, wage statement and wage

notice claims against Defendants under the FLSA and the NYLL.

---

[1]  Where a party makes minor clerical errors in its filings, courts in this Circuit generally do not require the party to refile their motion. *See, e.g.*, *Mariasy v. Poopy Prods., Inc.*, No. 20-CV-461, 2020 WL 6781521, at *4 n.1 (N.D.N.Y. Nov. 18, 2020) (granting a motion for default judgment although the plaintiff's affidavit "specifically contend[ed] that there [was] only one defendant — despite the case caption naming two" and identified a party as both plaintiff and defendant in the case); *Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc.*, No. 7-CV-3849, 2012 WL 4328355, at *3 (E.D.N.Y. June 21, 2012) (finding that although the plaintiff's damages statement carried the caption of another case, the court "assume[d] this was an inadvertent error as the figures represented in the [damages statement were] consistent with the damages [the plaintiff was] seeking"), *report and recommendation adopted*, 2012 WL 4328347 (E.D.N.Y. Sept. 19, 2012).

### i.   Statute of limitations

Under the FLSA, claims for non-willful violations must be filed within two years and willful violations must be filed within three years.  29 U.S.C. § 255(a); *see also Byer v. Peridontal Health Specialists of Rochester, PLLC*, No. 20-CV-1751, 2021 WL 3276725, at *1 (2d Cir. Aug. 2, 2021) ("The FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" (quoting *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 70 (2d Cir. 2014))).  To establish willfulness for purposes of the FLSA statute of limitations, a plaintiff must "show 'that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 322 (2d Cir. 2021) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)); *see also Parada*, 753 F.3d at 71 ("[I]f an employer acts unreasonably, but not recklessly, in determining its legal obligations, its action should not be considered willful." (alteration in original) (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995))); *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 280 (E.D.N.Y. 2015) (finding willfulness where the defendants did "not dispute that (1) they did not post FLSA and NYLL notices, (2) they made cash payments, and (3) they did not provide overtime pay"); *D'arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *5 (E.D.N.Y. June 18, 2013) (finding willfulness as a matter of law based on the "[d]efendants' method of compensating nearly all of the [p]laintiffs in cash and their arbitrary issuance of W-2s [to only some employees]").

Plaintiff has sufficiently alleged that Defendants' FLSA violations were willful.  Plaintiff alleges that Defendants paid her in cash, (Compl. ¶ 48), did not provide overtime pay, (*id.*

¶¶ 49–52), and did not provide Plaintiff with pay stubs or wage statements, (*id.* ¶ 53).  Plaintiff

also alleges that Defendants did not provide written notices explaining Defendants' contact

information and Plaintiff's regular rate, overtime rate, and payday, which omissions require the

Court to find that Defendant acted willfully.  (*See id.* ¶ 54).  Because the Court finds that

Defendants' violations are willful and Plaintiff filed her Complaint on February 4, 2022,

Plaintiff's allegations of labor violations which Plaintiff alleges occurred between May 1, 2019–

October 24, 2021 are timely.  (Compl. ¶¶ 1, 36.)

### ii.   Defendants are eligible employers under the FLSA and NYLL

#### 1.   Corporate defendants

Plaintiff alleges that Defendants D&S Wedding and D&S Grocery "used goods and

materials produced in interstate commerce, and . . . employed at least two individuals who

handled such goods and materials," (*id.* ¶¶ 12, 17), and also alleges that Defendants D&S

Wedding and D&S Grocery "had gross revenues in excess of $500,000" at all relevant times, (*id.*

¶¶ 11, 16).

"The FLSA contains two primary worker protections: first, it guarantees covered

employees a federal minimum wage; and second, it provides covered employees the right to

overtime pay at a rate of one-and-a-half their regular rate for hours worked above forty hours a

week."  *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019) (footnote omitted).

To qualify as a covered employee, an employee must be either (1) "engaged in commerce or in

the production of goods for commerce" (individual coverage) or (2) "employed in an enterprise

engaged in commerce or in the production of goods for commerce" (enterprise coverage).  29

U.S.C. §§ 206(a), 207(a)(1); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 86 n.2 (2d Cir.

2013).  The FLSA defines "[e]nterprise engaged in commerce or in the production of goods for

commerce," as a business that (1) has employees "engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an annual gross revenue of at least $500,000.  29 U.S.C. § 203(s)(1)(A); *see Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 205–06 (E.D.N.Y. 2021) (defining the conditions for enterprise coverage); *Cardenas v. Edita's Bar & Rest., Inc.*, No. 17-CV-5150, 2021 WL 4480570, at *4–5 (E.D.N.Y. Sept. 30, 2021) (finding that enterprise coverage applied where a business sold alcohol that moved in commerce and grossed sales over $500,000 a year); *see also Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544, 2021 WL 4341103, at *4 (E.D.N.Y. June 23, 2021) (finding no enterprise coverage where a complaint "lack[ed] the necessary factual detail necessary to support a finding that [d]efendants are engaged in interstate commerce"), *report and recommendation adopted*, 2021 WL 4340963, at *1 (E.D.N.Y. Sept. 23, 2021).  As to the annual sales requirement, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA."  *Soto v. Miss Laser Inc.*, No. 19-CV-4745, 2023 WL 319547, at *4 (E.D.N.Y. Jan. 19, 2023); *see also Quito v. Zheng*, 710 F. App'x 28, 29 (2d Cir. 2018) (noting that "annual sales exceeding $500,000 . . . is required for relief under the FLSA").

Plaintiff has established that D&S Wedding and D&S Grocery are "[e]nterprise[s] engaged in commerce or in the production of goods for commerce" pursuant to section 203(s)(1)(A) and Plaintiff is therefore a covered employee under the FLSA.

## 2.   Individual defendants

Plaintiff's allegations sufficiently establish that individual Defendants Wong and Chen are "owner[s] or part owner[s], manager[s], and principal[s]" of D&S Wedding and D&S Grocery.  (Compl. ¶¶ 20, 22, 24, 26.)  In addition, Plaintiff alleges that they were "involved in

the day-to-day operations . . . and played an active role in managing the business" of D&S

Wedding and D&S Grocery.  (*Id.* ¶¶ 21, 23, 25, 27.)  Plaintiff further alleges that Defendants

Wong and Chen had "the power to hire and fire employees, set wages and schedules, and

maintain [the] records" of D&S Wedding and D&S Grocery.  (*Id.* ¶¶ 20, 22, 24, 26.)

The FLSA defines "employer" to include "any person acting directly or indirectly in the

interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *Saleem v. Corp. Transp.

Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017) (same).  Under the FLSA, an "employer" may be

"an individual, partnership, association, corporation, business trust, legal representative, or any

organized group of persons."  29 U.S.C. § 203(a); *see also New York v. Scalia*, 490 F. Supp. 3d

748, 775 n.13 (S.D.N.Y. 2020) (same).  In determining whether a given individual is an

"employer" under the FLSA, courts should analyze "whether, as a matter of economic reality,

the workers depend upon someone else's business for the opportunity to render service or are in

business for themselves."  *Saleem*, 854 F.3d at 139 (quoting *Brock v. Superior Care*, 840 F.2d

1054, 1059 (2d Cir. 1988)).  The "economic reality" of an employer-employee relationship must

be determined on case-by-case basis in light of the totality of the circumstances, and cannot rest

on technical concepts.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013); *see also

Umbrino v. L.A.R.E Partners Network, Inc.*, 585 F. Supp. 3d 335, 353 (W.D.N.Y. 2022) ("[T]the

determination of whether an employer-employee relationship exists for purposes of the FLSA

should be grounded in economic reality rather than technical concepts, determined by reference

not to isolated factors, but rather upon the circumstances of the whole activity." (quoting *Barfield

v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008))).  The Second Circuit has

identified four factors that courts should consider in determining whether an employer-employee

relationship exists: whether an alleged employer "(1) had the power to hire and fire the

employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104 (quoting *Barfield*, 537 F.3d at 142).  However, these factors do not "comprise a rigid rule for the identification of an FLSA employer," but rather provide guidelines "to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* at 105 (quoting *Barfield*, 537 F.3d at 143) (internal quotation marks omitted). Ultimately, a district court may "consider any other factors it deems relevant to its assessment of the economic realities." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003). District courts in this Circuit interpret the definition of "employer" under the NYLL coextensively with the definition used by the FLSA. *See, e.g.*, *Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 372–75 (S.D.N.Y. 2022) (finding that plaintiff had sufficiently alleged that defendant was an employer under the FLSA and the NYLL).

Plaintiff has established that Defendants Wong and Chen meet each of the four factors relevant to determining whether they "possessed the power to control the workers in question," *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999), and has therefore established that they are "employers" under the FLSA and the NYLL.

### iii.   Minimum wage and overtime claims

Plaintiff's allegations sufficiently establish that during her employment "Defendants did not pay [her] minimum wage . . . compensation," (Compl. ¶¶ 49, 57–67), and "did not pay

Plaintiff . . . overtime compensation" both as required under the FLSA and the NYLL, (*id.* ¶¶ 49, 68–78). [2]

Both the FLSA and the NYLL contain provisions prohibiting employers from paying their employees a rate lower than a certain minimum hourly wage. 29 U.S.C. § 206(b); 12 N.Y.C.R.R. § 141-1.3. The minimum wage under the FLSA is $7.25 an hour; under the NYLL, the minimum wage was $13.50 in 2019, and $15.00 since December 31, 2019.[3] 29 U.S.C. § 206(a)(1)(C); NYLL § 652; *see, e.g.*, *Paschalidis v. Airline Rest. Corp.*, No. 20-CV-2804, 2021 WL 5013734, at *4 (E.D.N.Y. Oct. 28, 2021) (applying the $7.25 federal minimum wage to the plaintiff's employment during early 2020); *Anzurez v. La Unica Caridad Inc.*, No. 20-CV-3828, 2021 WL 2909521, at *4 (S.D.N.Y. July 12, 2021) (setting out the New York minimum wage rates from 2014 to 2020).

"When Plaintiffs bring both FLSA and NYLL minimum wage claims simultaneously, . . . double recovery is prohibited." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *11 (E.D.N.Y. Dec. 9, 2019); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (collecting cases). If "'a plaintiff is entitled to damages under both federal and state wage law,' the [c]ourt has discretion to 'award [that plaintiff] damages under the statute providing the greatest amount of relief.'" *Gamero*, 272 F.

---

[2] On November 17, 2022, Plaintiff withdrew her request for spread of hours pay. (*See* Wong Suppl. Decl. in Supp. of Pl.'s Mot. ¶ 4, Docket Entry No. 19.)

[3] The minimum wage rate increase takes place on the last day of the previous year, which is reflected in the calculations of the minimum wage owed to Plaintiff. *See* NYLL § 652. Since 2016, a different minimum wage applies to small and large employers in New York City. *See* NYLL § 652(1)(a)(i)–(ii). Because Plaintiff does not state whether Defendants are small or large employers, the Court applies the lower minimum wage.

Supp. 3d at 498 (quoting *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135, 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016)).

Both the FLSA and the NYLL "provide that employees must be paid, at minimum, one and one half the regular rate that they are normally paid for any hours worked in excess of forty hours per week." *Pinzon v. Paul Lent Mech. Sys., Inc.*, No. 11-CV-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (citing to *Rodriguez v. Queens Convenience Deli Corp.*, No. 9-CV-1089, 2011 WL 4962397, at *3 (E.D.N.Y. Oct. 18, 2011)). Both statutes provide that the regular rate is either the actual rate at which the employee is paid or the statutory minimum wage, whichever is higher. *See* 29 C.F.R. § 778.107; 12 N.Y.C.R.R. § 142-2.2 (providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA); *see also Silva v. Legend Upper West LLC*, No. 16-CV-3552, 2021 WL 4197360, at *9–10 (S.D.N.Y. Sept. 14, 2021) (calculating the plaintiffs' overtime rate of pay under the FLSA and the NYLL at one and one-half times the minimum wage).

Although Plaintiff pursues claims under both the FLSA and the NYLL, Plaintiff may only recover once for Defendants' minimum wage and overtime violations. Because the minimum wage and overtime rates are higher under the NYLL than the FLSA, the Court assesses Plaintiff's claims under the NYLL. *See Payamps*, 2019 WL 8381264, at *11–12 (awarding damages for minimum wages under the NYLL because more relief was available under the NYLL than the FLSA); *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (awarding damages under the NYLL rather than the FLSA because of the higher minimum wage).

From May 1, 2019 to September 30, 2019, Plaintiff worked an average of 41 hours per week: (5 days per week times 6 hours) plus (2 weddings times 5.5 hours) equals 41 hours. (*See* Compl. ¶¶ 37–39.) During this 153-day period, Plaintiff received $7,186: ($1,000 per month times 5 months) plus ($100 per week for two weddings times 21.86 weeks) equals $7,186. (*See* *id.*) Plaintiff should have been paid $12,247: [(40 hours per week times $13.50 per hour) plus (1 hour times ($13.50 per hour times 1.5))] times 21.86 weeks equals $12,247. Accordingly, Defendants owe Plaintiff $5,061 in unpaid wages for this period of time: $12,247 minus $7,186 equals $5,061.

From December 1, 2019 to March 12, 2020, Plaintiff worked an average of 41 hours per week: (5 days per week times 6 hours) plus (2 weddings times 5.5 hours) equals 41 hours. (*See* *id.* ¶¶ 40–42.) During this 103-day period, plaintiff received $4,471: ($1,000 per month times 3 months) plus ($100 per week for two weddings times 14.71 weeks) equals $4,471. (*See* *id.*) For the period from December 1, 2019 to December 31, 2019, Plaintiff should have been paid $2,482: [(40 hours per week times $13.50 per hour) plus (1 hour times ($13.50 per hour times 1.5))] times 4.43 weeks equals $2,482. For the period from January 1, 2020 to March 12, 2020, Plaintiff should have been paid $6,406: [(40 hours per week times $15 per hour) plus (1 hour times ($15 per hour times 1.5))] times 10.29 weeks equals $6,406. Accordingly, for the period from December 1, 2019 to March 12, 2020, Defendants owe Plaintiff $4,417 in unpaid wages: ($2,482 plus $6,406) minus $4,471 equals $4,417.

On September 19, 2020, Plaintiff worked for Defendants from 9 AM to 9 PM and was paid $100 for the day. (*Id.* ¶ 43.) Defendants should have paid Plaintiff $180 (12 hours times $15 per hour). Accordingly, for September 19, 2020, Defendants owe Plaintiff $80 in unpaid wages: $180 minus $100 equals $80.

15

During the period from May 10, 2021 to June 19, 2021, Plaintiff worked for Defendants from 9 AM until 5 PM from May 10, 2021 to May 15, 2021; from June 5, 2021 to June 10, 2021; and on June 19, 2021.  (*Id.* ¶ 45.)  For these 88 hours of work (11 days times 8 hours per day), Plaintiff received $700.  (*Id.* ¶ 46.)  For this period, Plaintiff should have received $1,320: 88 hours times $15 per hour equals $1,320.  Accordingly, for this period, Defendants owe Plaintiff $620 in unpaid wages: $1,320 minus $700 equals $620.

On October 24, 2021, Plaintiff worked for Defendants from 9 AM until 5 PM and received $100 from Defendants for this work.  (*Id.* ¶ 47.)  Defendants should have paid Plaintiff $120 (8 hours times $15 per hour).  Accordingly, for October 24, 2020, Defendants owe Plaintiff $20 in unpaid wages: $120 minus $100 equals $20.

Accordingly, throughout the period from May 1, 2019 to October 24, 2021, Defendants failed to pay Plaintiff the applicable New York minimum wage and from May 1, 2019 to March 12, 2020 failed to pay Plaintiff the applicable New York overtime wage.  As a result of these violations, Defendants underpaid Plaintiff in the amount of $10,198: $5,061 plus $4,417 plus $80 plus $620 plus $20 equals $10,198.

### iv.   Wage Theft Prevention Act claims

Plaintiff alleges that Defendants "failed to provide Plaintiff with written notices providing . . . Defendants' contact information, her regular and overtime rates, and intended allowances claimed" and failed to provide her "weekly wage statements required by the Wage Theft Prevention Act."  (Compl. ¶¶ 54, 84–89.)

"As of April 9, 2011, an employer must provide an employee with a wage notice within ten business days of the start of employment and then annually every February thereafter." *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 569 (E.D.N.Y. 2015) (quoting *Yuquilema v.*

16

*Manhattan's Hero Corp.*, No. 13-CV-461, 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014)).  This notice must include, among other things, (1) "the rate or rates of pay and basis thereof"; (2) "whether paid by the hour, shift, day, week, salary, piece, commission, or other"; (3) "the regular pay day designated by the employer"; (4) "the name of the employer"; (5) "any 'doing business as' names used by the employer"; and (6) "such other information as the commissioner deems material and necessary."  NYLL § 195(1)(a); *see also Mendez*, 564 F. Supp. 3d at 219 (describing the required contents of the wage notice under § 195(1)).  "Under Section 195(3), employers must give their employees accurate wage statements that include the dates and hours worked, the rate of pay and additional details." *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 660 (E.D.N.Y. 2020).  An employee who is not given these statements may "recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees."  NYLL § 198(1-d).

Plaintiff alleges that Defendants "fail[ed] to provide [her] with weekly wage statements . . . At any time during [her] employment." (Compl. ¶ 87.)  She alleges that Defendants failed to provide "contact information, her regular and overtime rates, and intended allowances claimed" and likewise failed to provide her "with weekly wage statements."  (Compl. ¶¶ 54, 84–89.) Plaintiff has therefore established that Defendants are liable for violation of the NYLL's wage statement and wage notice provisions for the duration of the period Plaintiff was employed by them.

###### vi.     Damages and costs

###### 1.     Actual damages for unpaid minimum wage and overtime

As discussed in section II(b)(iii) above, Defendants owe Plaintiff $10,198 in actual damages for unpaid minimum and overtime wages.

###### 2.     Liquidated damages

Plaintiff argues that "Defendants have not appeared and have not demonstrated good faith for their failure to properly pay" and that therefore "liquidated damages are appropriate." (Pl.'s Mem. 7.)

The FLSA provides for the payment of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission . . . was not a violation of the [FLSA]," 29 U.S.C. § 260; *see also Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) ("The FLSA provides for 'the payment of wages lost and an additional equal amount as liquidated damages . . . .'" (quoting 29 U.S.C. § 216(b)). The employer bears the burden of proving good faith. *Herman*, 172 F.3d at 142–43 (citing *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)); *Gortat*, 949 F. Supp. 2d at 380 ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." (quoting *Herman*, 172 F.3d at 142)). "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman*, 172 F.3d at 142. "Similarly, under the NYLL, an employee is entitled to 'liquidated damages equal to one hundred percent of the total amount of wages found to be due,' 'unless the employer proves a good faith basis to

believe that its underpayment of wages was in compliance with the law.'" *Hernandez*, 2016 WL 3248493, at *34 (quoting NYLL § 198(1-a)). "[C]ourts have not substantively distinguished the federal standard from the current state standard of good faith." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).

Defendants have not appeared in the action and have not proffered any good faith basis or explanation for their underpayment of wages. Plaintiff seeks liquidated damages for her unpaid wages, but does not specify whether she seeks them under the FLSA or the NYLL. (Pl.'s Mem. 7.) Because Plaintiff cannot recover under both the FLSA and the NYLL for the same conduct, *see Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (noting that the FLSA and the NYLL do not allow "duplicative liquidated damages for the same course of conduct"), and under the NYLL an employee may receive both liquidated damages and prejudgment interest, the Court awards liquidated damages to Plaintiff under the NYLL. *See* NYLL § 198(1-a) (providing that the plaintiff in a wage claim under the NYLL may recover "prejudgment interest . . . and . . . an additional amount as liquidated damages"); *Reilly v. Natwest Mkts. Grp. Inc*., 181 F.3d 253, 265 (2d Cir. 1999); *Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141, 2021 WL 2401176, at *11 (E.D.N.Y. June 11, 2021) (stating that "where a plaintiff has already received an award of FLSA liquidated damages," the plaintiff is "entitled to an award of prejudgment interest only on [damages] for which liquidated damages pursuant to the FLSA were not assessed" (quoting *McFarlane v. Harry's Nurses Registry*, No. 17-CV-6350, 2020 WL 7186791, at *4 (E.D.N.Y. Dec. 7, 2020))).[4]

---

[4] Liquidated damages are not available on claims under the Wage Theft Prevention Act. NYLL § 198(1-b), (1-d) (providing that damages up to $5,000 are available for violations of the wage statement or wage notice provisions of the Wage Theft Prevention Act, but not providing for liquidated damages); *see also Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557

Accordingly, the Court awards Plaintiff liquidated damages for Plaintiff's unpaid wages under the NYLL minimum wage and overtime statutes in the amount of $10,198.

### 3. Damages for failure to provide wage notices and wage statements

Plaintiff argues that because "[D]efendant[s] violated both the annual notice and the weekly wage statement provisions, as they provided no written notices or paystubs," "full damages is appropriate." (Pl.'s Mem. 9.)

### A. Wage notice

Under the NYLL, if a wage notice under section 195 is not provided "within ten business days of" the employee's "first day of employment," the employee "may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." NYLL § 198(1-b); *see also Carter*, 78 F. Supp. 3d at 570 (citing NYLL § 198(1-b).

As discussed in section II(b)(iv) above, Defendants are liable for violation of the NYLL's wage notice provision for the duration of Plaintiff's employment. Plaintiff worked for Defendants in excess of 100 days during the period from May 1, 2019 to October 24, 2021 and is therefore entitled to recover $5,000. *See* NYLL § 198(1-b) (providing damages of $50 up to $5,000 for every day the violation continues); *Qiu Hua Tan v. Voyage Express Inc.*, No. 15-CV-6202, 2017 WL 2334969, at *7 (E.D.N.Y. May 25, 2017) (recommending that the plaintiffs be "awarded the statutory maximum of $5000" because they "were employed by defendants for respective periods in excess of one hundred days yet never received the requisite wage notices.")

_____

(S.D.N.Y. 2017) ("Prejudgment interest is not available for violations of the wage statement or wage notice provisions.").

### B.   Wage statements

As discussed in section II(b)(iv) above, Plaintiff worked for Defendants in excess of twenty days during the period from May 1, 2019 to October 24, 2021 and is therefore entitled to recover the statutory amount of $5,000.  *See* NYLL § 198(1-d) (providing damages of $250 up to $5,000 for each day the violations continue); *Guauque Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235, 2021 WL 4755701, at *8 (E.D.N.Y. Aug. 20, 2021) (awarding plaintiffs $5,000 for wage notice violations "[s]ince both plaintiffs worked more than twenty days"), *report and recommendation adopted*, 2021 WL 4205195 (E.D.N.Y. Sept. 16, 2021); *Atsas v. Law Office of Alex Antzoulatos*, No. 20-CV-3838, 2021 WL 4755703, at *9 (E.D.N.Y. Aug. 10, 2021) ("Since plaintiffs worked over [twenty] days for defendants, they are both entitled to receive $5,000 for the violation of NYLL § 195(3)."), *report and recommendation adopted*, 2021 WL 3928951 (E.D.N.Y. Sept. 2, 2021).

### 4.   Prejudgment interest

Plaintiff requests prejudgment interest at the statutory rate of nine percent per annum to be calculated from the midpoint of her employment, July 27, 2020.  (Suppl. Decl. of Vincent S. Wong ¶ 63.)

Section 198(1-a) of the NYLL allows an employee who prevails in an action on a wage claim to recover "prejudgment interest as required under the civil practices and rules."  "The applicable interest rate is 9% per annum."[5]  *Feuer v. Cornerstone Hotels Corp.*, No.

---

[5]  Because Plaintiff is receiving damages only under the NYLL, the Court only considers prejudgment interest under that statute.  *See Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451, 2016 WL 8376837, at *16 (E.D.N.Y. Dec. 21, 2016) (considering prejudgment interest under the NYLL rather than the FLSA "because the Court has recommended that plaintiff receive damages only under the NYLL"), *report and recommendation adopted*, 2017 WL

14-CV-5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 24, 2020) (citing N.Y.C.P.L.R.

§§ 5001(b), 5004). "Interest shall be computed from the earliest ascertainable date the cause of

action existed," or, "[w]here such damages were incurred at various times, interest shall be

computed upon each such item from the date it was incurred or upon all of the damages from a

single reasonable intermediate date." N.Y.C.P.L.R. § 5001(b).

Because Defendants paid Plaintiff below the New York minimum wage over a period of

several months, the Court calculates prejudgment interest from a reasonable intermediate date.

*See Feuer*, 2020 WL 401787, at *12 & n.22 (calculating prejudgment interest on unpaid wages

from a date halfway between the first and last days of the employee's employment); *Santillan v.*

*Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (same); *Ying Ying Dai*, 490 F. Supp. 3d at 662

(same). Defendants employed Plaintiff from approximately May 1, 2019 to October 24, 2021.

(Pl.'s Mem. 2.) The Court therefore calculates interest from July 27, 2020, the date halfway

between May 1, 2019 and October 24, 2021. Plaintiff is entitled to prejudgment interest on her

wage claim damages from July 27, 2020 until the date judgment is entered, at a rate of $2.51 per

day ($10,198 times .09 divided by 365 days). *See Ying Ying Dai*, 490 F. Supp. 3d at 662.

**5. Attorneys' fees and costs**

Plaintiff seeks an award of $8,655 in attorneys' fees, which represents 23.7 hours of work

conducted on this case by the Law Offices of Vincent S. Wong. (Suppl. Decl. of Vincent S.

Wong ¶ 73.)

Under both the FLSA and the NYLL, prevailing plaintiffs are entitled to reasonable

attorneys' fees and costs. 29 U.S.C. § 216(b); NYLL § 198(1)(a); *Fisher v. SD Prot. Inc.*, 948

---

780799 (E.D.N.Y. Feb. 28, 2017), *vacated on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan.
23, 2018).

F.3d 593, 600 (2d Cir. 2020).  Both the Second Circuit and the Supreme Court have held that

"the lodestar [method] — the product of a reasonable hourly rate and the reasonable number of

hours required by the case — creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R.*

*Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood*

*Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)) (citing *Perdue v. Kenny A. ex rel.*

*Winn*, 559 U.S. 542, 551–53 (2010)).

    Trial courts are afforded "considerable discretion in determining what constitutes

reasonable attorney's fees in a given case." *Barfield*, 537 F.3d at 151.  In exercising this

discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have

identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."

*Id.* (quoting *Arbor Hill*, 522 F.3d at 190).  "'The most critical factor' in a district court's

determination of what constitutes reasonable attorney's fees in a given case 'is the degree of

success obtained' by the plaintiff."  *Id.* at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114

(1992)).  Other factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and
> capacity of the client's other counsel (if any), the resources required
> to prosecute the case effectively (taking account of the resources
> being marshaled on the other side but not endorsing scorched earth
> tactics), the timing demands of the case, whether an attorney might
> have an interest (independent of that of his client) in achieving the
> ends of the litigation or might initiate the representation himself,
> whether an attorney might have initially acted *pro bono* (such that a
> client might be aware that the attorney expected low or non-existent
> remuneration), and other returns (such as reputation, etc.) that an
> attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184, 190 (clarifying that district courts should consider, among others,

the factors laid out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.

1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).  The fee

applicant bears the burden of "submit[ting] adequate documentation supporting the requested

attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." (alteration in original)); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation." (alteration in original))).

## A.   Hourly rate

Plaintiff's counsel seeks attorneys' fees at the rates of $450 per hour for the principal attorney, Vincent S. Wong, $350 for the assisting attorney, Michael Brand, and $150 per hour for the legal assistant associated with the case.  (Suppl. Decl. of Vincent S. Wong ¶ 73.)  For the reasons explained below, the Court finds that the rates sought by Plaintiff's counsel exceed the community rates for similar services and reduces them accordingly.

"A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" *Spain v. Kinder Stuff 2010 LLC*, No. 14-CV-2058, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting *Arbor Hill*, 522 F.3d at 190).  Such rates should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)) (citing *Hensley*, 461 U.S. at 433).  "Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community." *Spain*, 2015 WL 5772190, at *8 (first citing *Farbotko v. Clinton Cnty*, 433 F.3d 204, 209 (2d Cir.

24

2005); and then citing *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059

(2d Cir. 1989)). "[T]he 'community' . . . is the district where the district court sits." *Arbor Hill*,

522 F.3d at 190 (clarifying "forum rule") (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722

F.2d 23, 25 (2d Cir. 1983)).

"[T]he prevailing rates for experienced attorneys in Eastern District of New York cases

range from approximately $300–400 per hour." *Konits v. Valley Stream Cent. High Sch. Dist.*,

No. 01-CV-6763, 2010 WL 2076949, at *2 (E.D.N.Y. May 19, 2010), *aff'd sub nom. Konits v.*

*Karahalis*, 409 F. App'x 418, 422–23 (2d Cir. 2011). Although some courts in this District

"have recognized slightly higher ranges . . . of $300–$450 per hour for partners," *Harris v. Best*

*Companion Homecare Servs., Inc.*, No. 18-CV-5328, 2019 WL 4738821, at *8 (collecting

cases), the cases in which the upper limit of this range has been awarded have involved

"attorneys with [twenty] or more years of experience." *Small v. N.Y.C. Transit Auth.*, No. 03-

CV-2139, 2014 WL 1236619, at *6–7 (E.D.N.Y. Mar. 25, 2014) (collecting cases). In the

Eastern District of New York, "senior associates are typically awarded $200 to $325 per hour."

*Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281, 2022 WL 3703955, at *18

(E.D.N.Y. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4813505 (E.D.N.Y.

Oct. 3, 2022).

"The rates for paralegals in the Eastern District range from $60 to $100 per hour."

*Hormel Foods Sales, LLC v. Ship Side Food Serv., Inc.*, No. 16-CV-1595, 2018 WL 3202076, at

*2 (E.D.N.Y. Mar. 23, 2018) (citing *Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL

6585810, at *20 (E.D.N.Y. Sept. 30, 2016)), *report and recommendation adopted*, 2016 WL

6601445 (E.D.N.Y. Nov. 7, 2016)). "One hundred dollars per hour is the appropriate rate for

those [support staff] with significant experience, while an hourly rate of $70 [is] appropriate for

25

those with less or minimal experience." *Ally Fin.*, 2022 WL 3703955, at *19 (alterations in

original) (quoting *C.A. v. N.Y.C. Dep't of Educ.*, 20-CV-2101, 2022 WL 673762, at *6 (E.D.N.Y.

Feb. 16, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 673272

(E.D.N.Y. Mar. 7, 2022)).

      Vincent S. Wong is well credentialed for his twenty-eight years of practice.  (Suppl. Decl.

of Vincent S. Wong ¶ 76.)  However, the Court finds based on its review of Plaintiff's

supporting documentation and other similar cases that a rate of $400 per hour is more in line

with rates "prevailing in the community for similar services of lawyers of reasonably comparable

skill, experience, and reputation."  *Cruz*, 34 F.3d at 1159 (quoting *Blum*, 465 U.S. at 896 n.11).

*See, e.g.*, *Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844, 2015 WL 1476415, at *8

(E.D.N.Y. Mar. 31, 2015) (awarding $400 per hour to partner with twenty-seven years of

experience); *Todaro v. Siegel Fenchel & Peddy, P.C.*, 697 F. Supp. 2d 395, 399 (E.D.N.Y. 2010)

(awarding $400 per hour to partner with seventeen years of experience); *Luca v. County of

Nassau*, 698 F. Supp. 2d 296, 301–02 (E.D.N.Y. 2010) (awarding $400 per hour to partner with

over twenty-five years of experience who had handled roughly 180 civil rights cases in this

District alone); *but see Hormel Foods Sales*, 2018 WL 3202076, at *2 (reducing award of $475

per hour to $450 per hour for a partner with twenty years of experience); *Thorsen v. County of

Nassau*, No. 03-CV-1022, 2011 WL 1004862, at *5–6 (E.D.N.Y. Mar. 17, 2011) (awarding $425

per hour to "well known labor and employment attorney with [twenty-six] years of experience").

      Based on Mr. Brand's fourteen years of experience, (Suppl. Decl. of Vincent S. Wong

¶ 78), the Court finds that the rate of $325, rather than $350, is more in line with rates

"prevailing in the community for similar services of lawyers of reasonably comparable skill,

experience, and reputation," *Cruz*, 34 F.3d at 1159 (quoting *Blum*, 465 U.S. at 896 n.11).  *See,*

*e.g.*, *Ally Fin.*, 2022 WL 3703955, at *18–19 (awarding rates of $325, $300, and $250 for associates with "nearly two decades," fifteen years, and seven years of experience, respectively); *Hormel Foods Sales, LLC*, 2018 WL 3202076, at *2 (finding a rate of $325 appropriate for an associate with ten years of experience).

The Court finds that a rate of $70 per hour rather than $150 per hour is more in line with the recognized rates for legal assistants in this District.  *See, e.g.*, *Ally Fin.*, 2022 WL 3703955, at *20 (finding a rate of $70 per hour appropriate for legal support staff where plaintiffs "provided no information regarding [the individual's] responsibilities or a description of his role").

### B.   The amount of hours

Plaintiff requests attorneys' fees for 23.7 hours of work, including 7 hours of work by principal attorney Vincent S. Wong, 15 hours of work by attorney Michael Brand, and 1.7 hours of legal assistant work.  (Suppl. Decl. of Vincent S. Wong ¶ 73.)  The Court finds the hours spent on this matter to be reasonable.

"In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case."  *Spain*, 2015 WL 5772190, at *8 (first citing *Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994); and then citing *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985)). "To determine whether the number of hours spent by [p]laintiff's counsel was reasonable, the [c]ourt must 'use [its] experience with the case, as well as [its] experience with the practice of law. . . .'"  *Harris*, 2019 WL 4738821, at *9 (third and fourth alterations in original) (quoting *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).  "If any expenditure of time was unreasonable, the court should exclude these hours from the calculation."  *Spain*, 2015 WL 5772190, at *8 (first citing *Hensley*, 461 U.S. at 434; and then

citing *Lunday*, 42 F.3d at 133).  The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999)).  As with attorneys' fees, the party seeking costs bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records.  *Carey*, 711 F.2d at 1147–48.

The Court finds that the 23.7 hours of work billed by Plaintiff's counsel is presumptively reasonable for a single-plaintiff FLSA default case.  *See Aguilar v. Fence Guy, Inc.*, No. 17-CV-7412, 2019 WL 8160723, at *3 (E.D.N.Y. Dec. 2, 2019) (finding 24.4 hours of attorney work, including 0.4 hours of partner-level work and 24 hours of senior associate work, "well within those [hours] typically associated with time spent on a wage and hour case that culminates in a plaintiff's default judgment"), *report and recommendation adopted*, 2020 WL 1066345 (E.D.N.Y. Mar. 5, 2020).  However, in light of the multiple errors in Plaintiff's motion and supporting documents, the Court reduces the number of hours billed by ten percent.  Plaintiff's counsel states that they billed over fifteen hours preparing the default judgment motion, including 3.9 hours drafting the motion and supporting filings and 1.1 hours for the principal attorney to review and finalize the filings.  (*See* Time Records 4–5, annexed to Pl.'s Aff./Decl. as Ex. E, Docket Entry No. 16-5.)  Given the errors in the filings, this expenditure of time is excessive, and accordingly the Court reduces the hours billed by ten percent.  *See Patterson v. Copia NYC LLC*, No. 15-CV-2327, 2015 U.S. Dist. LEXIS 189029, at *20 (S.D.N.Y. Dec. 29, 2015) (decreasing the number of hours billed by fifteen percent given that there were several calculation errors in the damage amounts submitted; noting that "an across-the-board percentage cut[] in hours [is] a practicable means of trimming fat from a fee application" (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987))).

28

### C.   Reasonableness of attorneys' fees

In sum, the Court finds that $400 per hour for 7 hours of principal attorney work, $325 per hour for 15 hours of attorney work, and $70 per hour for 1.5 hours of legal assistant work yield a "presumptively reasonable fee" in this case of $7,780.  In light of the multiple errors contained in the motion and supporting documents, the Court reduces the hours of each attorney and the legal assistant by ten percent, yielding a total fee of $7,015.

### D.   Costs

Plaintiff seeks costs in the amount of $552, including a $402 court filing fee and $150 in service of process fees.  (Time Records 6.)

"An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'"  *Fisher*, 948 F.3d at 600 (alteration in original) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).  As with attorneys' fees, "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs."  *Id.*

The Court finds that Plaintiff's requested costs are reasonable and supported by adequate documentation.  Because Plaintiff's request for costs covers only "reasonable out-of-pocket expenses . . . which are normally charged fee-paying clients," and because these costs are supported by adequate documentation, the Court grants Plaintiff's request for costs in the amount of $552.  *Fisher*, 948 F.3d at 600 (quoting *Reichman*, 818 F.2d at 283); *Carey*, 711 F.2d at 1154.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiff's motion

for default judgment.

Dated:  September 27, 2023
        Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge